UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61555-CIV-ALTONAGA/Simonton

NATIONAL MARITIME
SERVICES, INC.

        Plaintiff,

vs.

GLENN F. STRAUB and BURRELL
SHIPPING CO., LLC,

        Defendants.

_____/

## PLAINTIFF'S MOTION TO COMMENCE PROCEEDINGS SUPPLEMENTARY AND TO IMPLEAD THIRD PARTIES INTO PROCEEDINGS

Pursuant to Rule 69 of the Federal Rules of Civil Procedure and Section 56.29, Florida Statutes, Plaintiff, National Maritime Services, Inc. (**"National Maritime"**), hereby moves for commencement of proceedings supplementary and to implead parties into proceedings.   In support of this Motion, National Maritime states:

### Background

1.     On August 24, 2010, National Maritime initiated the above-styled action in this Court against Straub and Burrell Shipping Company, LLC ("**Burrell Shipping**"), alleging, *inter alia*, breach of contract and unjust enrichment for unpaid services rendered.  [D.E. 1].

2.     On July 19, 2011, this Court entered a Final Judgment in favor of National Maritime and against Burrell Shipping in the amount of $99,660.05, plus interest (the "**Judgment**") [D.E. 59].

3.     National Maritime obtained a Writ of Execution in an effort to collect on the Judgment (the "**Writ of Execution**").  A true and correct copy of the Writ of Execution is attached hereto as Exhibit "**A**."

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 2 of 45

4.      On August 10, 2011, National Maritime obtained a Judgment Lien Certificate from the Florida Secretary of State.  A true and correct copy of the Judgment Lien Certificate is attached hereto as Exhibit "B."

5.      The Writ of Execution remains unsatisfied and is valid and outstanding.  *See* Affidavit of Eyal Berger, Esq. ("**Berger Aff.**"), ¶ 5, attached hereto as Exhibit "C."  Pursuant to Fed. R. Civ. P. 69(a), the procedures for proceeding supplementary to and in aid of judgment obtained in a federal district court, "shall be in accordance with the practice and procedure of the state in which the district is held." *Id.* Accordingly, the Florida practices and procedure set forth in Section 56.29, Florida Statutes, apply.  *See, e.g., MCI Telecommunications Corp. v. O'Brien Marketing, Inc.*, 913 F. Supp. 1536 (S.D. Fla. 1995).

6.      Pursuant to Section 56.29, a judgment creditor holding an unsatisfied writ of execution on a judgment is entitled to implead third parties to whom the judgment debtor may have made fraudulent transfers or who may be alter egos of the judgment debtor.  *See, e.g., Exceletech, Inc. v. Williams*, 597 So.2d 275 (Fla. 1992); *see also Allied Industries Intern., Inc. v. AGFA-Gevaert, Inc.*, 688 F. Supp. 1516 (S.D. Fla. 1988).

7.      Here, Burrell Shipping, as the judgment debtor, has acted to defraud, hinder, and delay National Maritime, the judgment creditor, by transferring all of its assets to its insider, without formality or consideration. *See infra.*; *see also generally* Berger Aff.

## Party to Implead in Supplementary Proceedings

8.      National Maritime conducted post-judgment discovery in aid of execution pursuant to Rule 69 of the Federal Rules of Civil Procedure.  As discussed more fully herein, based upon the documents National Maritime obtained, as well as the deposition testimony of Glenn F. Straub ("**Straub Depo.**") [D.E. 61], relevant excerpts attached hereto as Exhibit "D," National Maritime believes that Glenn F. Straub, the President and Chief Operating Officer for Burrell Shipping, received a fraudulent transfer of money from Burrell Shipping within one (1)

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 3 of 45

year of service of process on the original suit.  Accordingly, National Maritime seeks to implead

in proceedings supplementary Glenn F. Straub for purposes of execution.

### Glenn F. Straub

9.      National Maritime seeks to implead Glenn F. Straub ("**Straub**"), a Florida

resident, as he received a fraudulent transfer of money from Burrell Shipping.

10.     Straub is the President and Chief Operating Officer of Burrell Shipping.  *See*

Straub Depo., 4:24 and 28:22-25.

11.     On October 29, 2008, Burrell Shipping, as mortgagor, entered into a mortgage

agreement (the "**Mortgage**") with an affiliate, Burrell Industries, Inc. ("**Burrell Industries**"), as

mortgagee, for $3.2 million in order to purchase a casino boat (the "**Boat**") named "Island

Adventure."  A true and correct copy of the Mortgage is attached hereto as Exhibit "**E**".  *See also*

Straub Depo., 28:6-15.  Straub had previously placed a bid on the Boat in bankruptcy court.  *See*

Straub Depo., 13:4-12.

12.     Prior to the Mortgage, Straub transferred $3.2 million to Burrell Industries.  He

did not secure any collateral for this transfer.  *See* Straub Depo., 28:3-5 and 34:25-35:1-12.

13.     On May 6, 2011, Burrell Shipping sold the Boat to a scrapper for the sum of

$2.249 million (the "**Sale Proceeds**").  *See* Purchase Letter, attached hereto as Exhibit "**F**"; *see*

*also* Straub Depo., 45:16-18.

14.     On that same day, May 6, 2011, Burrell Shipping directly wire-transferred the

Sale Proceeds to Straub (the "**Transfer**"), despite the fact that the Mortgage was entered into by

and between Burrell Shipping and Burrell Industries -- not Straub.  A true and correct copy of the

Transfer is attached hereto as Exhibit "**G**."  *See also* Straub Depo., 35:3-9.

15.     At the time of the Transfer, Burrell Shipping was indebted to National Maritime

for unpaid services rendered, and was involved in the instant suit brought by National Maritime

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 4 of 45

against Burrell Shipping and Straub as co-defendants, though the Final Judgment had not yet been entered.

16.     Straub, as President and Chief Operating Officer of Burrell Shipping, knew or reasonably should have known that Burrell Shipping had an outstanding account with National Maritime. *See* Straub Depo., 35:13-36:7, 52:21-54:6, 55:17-56:6, and 57:2-10.

17.     Straub, as President and Chief Operating Officer of Burrell Shipping, knew or reasonably should have known that the Boat was Burrell Shipping's only asset and that Burrell Shipping was otherwise insolvent. *See* Straub Depo., 15:24 and 44:6-15.

18.     The transfer of the $2.249 million from Burrell Shipping to Straub was a fraudulent transfer to an insider pursuant to § 56.29(b)(a).  Accordingly, Burrell Shipping and Straub have the burden of proof to establish that the transfer of said sums was not a fraudulent transfer.

19.     Alternatively, under Section 726.105(1)(a), Florida Statutes, a transfer is fraudulent if it is made with the "actual intent to hinder, delay, or defraud any creditor of the debtor."  The statute lists various factors to be considered in determining whether "actual intent" is present, including:

> (2)   In determining actual intent under paragraph (1)(a), consideration may be given, among other factors, to whether:
>
> (a)   The transfer or obligation was to an insider.
> (b)   The debtor retained possession or control of the property transferred after the transfer.
> (c)   The transfer or obligation was disclosed or concealed.
> (d)   Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
> (e)   The transfer was of substantially all the debtor's assets.
> (f)   The debtor absconded.
> (g)   The debtor removed or concealed assets.
> (h)   The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
> (i)   The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 5 of 45

(j)   The transfer occurred shortly before or shortly after a substantial debt was incurred.
(k)   The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Id.* at subsection (2).  The factors listed are satisfied in this instance, demonstrating the "actual intent" *inter alia*: Straub is an insider, Burrell Shipping had been sued by National Maritime at the time of the Transfer, the Transfer was of all of Burrell Shipping's assets, and Burrell Shipping became insolvent as a result of the Transfer.  The facts support a finding of fraudulent transfer pursuant to Section 726.105(1)(a).

20.     Under Section 726.105(1)(b), Florida Statutes, a transfer is fraudulent if it is made:

Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
1.   Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
2.   Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

As previously discussed, the facts  involved support a finding of fraudulent transfer pursuant to Section 726.105(1)(b).

21.     Under Section 726.106(1), Florida Statutes:

(1)   A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

As previously discussed, the facts  involved support a finding of fraudulent transfer pursuant to Section 726.106(1).

22.     Under Section 726.106(2), Florida Statutes, a transfer is fraudulent if it is made:

(2)   A transfer made by a debtor is fraudulent as to a creditor whose claim arose before  the transfer was made if the transfer was made to an insider for an

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 6 of 45

antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

As previously discussed, the facts involved support a finding of fraudulent transfer pursuant to Section 726.106(2).

23.    A copy of the National Maritime's Proposed Impleader Complaint is attached hereto as Exhibit "**H**".[1]

WHEREFORE, Plaintiff, National Maritime Services, Inc., respectfully requests that the Court: (a) order proceedings supplementary pursuant to § 56.29; (b) implead the Impleaded Defendant pursuant to the attached Proposed Impleader Complaint; (c) order the Impleaded Defendant to respond to the Impleader Complaint within twenty (20) days of service of the Court's Order granting the instant Motion; (d) set a final hearing pursuant to § 56.29(2); (e) award Plaintiff the fees and costs associated with the instant Action pursuant to § 56.29(11); and (f) grant such other and further relief as is deemed just and proper.

Dated:  November 18, 2011

AKERMAN SENTERFITT

By: /s/ Eyal Berger
　　Jason Oletsky, Esq.
　　Florida Bar No.: 009301
　　Email: jason.oletsky@akerman.com
　　Eyal Berger, Esq.
　　Florida Bar No.: 11069
　　Email: eyal.berger@akerman.com
　　Tamara J. Savin, Esq.
　　Florida Bar No.: 72758
　　Email: tamara.savin@akerman.com
　　350 E. Las Olas Blvd., Suite 1600
　　Ft. Lauderdale, Florida 33301
　　Telephone: (954) 712-6071
　　Facsimile: (954) 463-2224
　　*Attorneys for National Maritime Services Inc.*

---

[1] The undersigned is aware that Straub was named as a party to this underlying suit; however, due to the fact that the Court only found Burrell Shipping liable to National Maritime, the undersigned seeks to implead Straub in an abundance of caution in these proceedings supplementary.

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 7 of 45

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via electronic mail using the court's CM/ECF system to all parties listed on the attached Service List and/or via U.S. Mail this 18th day of November, 2011.


By:  ___/s/ Eyal Berger_____
      Eyal Berger
      Florida Bar No. 11069
      eyal.berger@akerman.com

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 8 of 45

## SERVICE LIST

**Craig Thomas Galle**
Chapman Galle PLLC
13501 Southshore Boulevard
Suite 103
Wellington, FL 33414
Email: pololawyer@aol.com

**Patrick Edward Novak**
Horr Novak & Skipp
9100 S Dadeland Boulevard
Suite 1104 One Datran Center
Miami, FL 33156-7866
Email: patrickn@admiral-law.com

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 9 of 45

## WRIT OF EXECUTION

| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF FLORIDA |
|---|---|

To the Marshal of:  **UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF FLORIDA**

YOU ARE HEREBY COMMANDED, that of the goods and chattels, lands and tenements in your district belonging to:

NAME:

**Burrell Shipping Company, LLC**
**11199 Polo Club Road**
**Wellington, FL  33414**

you cause to be made and levied as well a certain debt of:

| DOLLAR AMOUNT | DOLLAR AMOUNT |
|---|---|
| **$99,660.05** | |

in the United States District Court for the Southern District of Florida, before the Judge of the said Court by the consideration of the same Judge lately recovered against the said,

### Burrell Shipping Company, LLC

**0:10-cv-61555-CMA**
**National Maritime Services, Inc. v. Glenn F. Straub and Burrell Shipping Company, LLC**
**Via Final Judgment entered July 19, 2011**

and also the costs that may accrue under this writ.

And that you have above listed moneys at the place and date listed below; and that you bring this Writ with you.

| PLACE | DISTRICT |
|---|---|
| **U.S. MARSHALL'S OFFICE/UNITED STATES DISTRICT COURT** | **SOUTHERN DISTRICT OF FLORIDA** |
| CITY | DATE |
| **MIAMI, FLORIDA** | |

Witness the Honorable _____

(United States Judge)

| DATE | CLERK OF COURT |
|---|---|
| 9/28/11 | |

### RETURN

| DATE RECEIVED | DATE OF EXECUTION OF WRIT |
|---|---|
| This Writ was received and executed | |
| U.S. MARSHALL | BY: DEPUTY MARSHALL |



**EXHIBIT**

**"A"**

{21095101;1}

# ELECTRONIC JUDGMENT LIEN CERTIFICATE

FOR PURPOSES OF FILING A JUDGMENT LIEN, THE FOLLOWING INFORMATION IS SUBMITTED IN ACCORDANCE WITH s. 55.203, F.S..

**JUDGMENT DEBTOR (DEFENDANT) NAME(S) AS SHOWN ON JUDGMENT LIEN:**

BURRELL SHIPPING COMPANY LLC
11199 POLO CLUB ROAD
WELLINGTON, FL. 33414
FEI#: AP-PLIED      DOS DOCUMENT#: L08000099384

**J11000503099**
**FILED**
**Aug 10, 2011 08:00 A.M.**
**Secretary of State**
PYARBOR

**JUDGMENT CREDITOR (PLAINTIFF) NAME AS SHOWN ON JUDGMENT LIEN OR CURRENT OWNER OF JUDGMENT IF ASSIGNED:**

NATIONAL MARITIME SERVICES, INC.
1915 SW 21 AVENUE
FORT LAUDERDALE, FL  33312
DOS DOCUMENT#: P03000138713

**NAME AND ADDRESS TO WHOM ACKNOWLEDGMENT/CERTIFICATION IS TO BE MAILED:**

EYAL BERGER
EYAL.BERGER@AKERMAN.COM

AMOUNT DUE ON MONEY JUDGMENT: 99660.05
APPLICABLE INTEREST RATE: 6.00%
NAME OF COURT: U.S.D.C, S.D. FLORIDA
CASE NUMBER: 10-61555-CIV-ALTONAGA
DATE OF ENTRY: 07/19/11
WAS A WRIT OF EXECUTION DOCKETED ON THIS JUDGMENT LIEN WITH ANY SHERIFF PRIOR TO OCTOBER 1, 2001?
  ( ) YES  (IF YES, A "CREDITOR AFFIDAVIT CERTIFICATION" FORM MUST BE ATTACHED TO THIS CERTIFICATE.)
  (X) NO

UNDER PENALTY OF PERJURY, I hereby certify that: (1) The judgment above described has become final and there is no stay of the judgment or its enforcement in effect; (2) All of the information set forth above is true, correct, current and complete; (3) I have not previously filed a Judgment Lien Certificate regarding the above judgment with the Department of State; and, (4) I have complied with all applicable laws in submitting this Electronic Judgment Lien Certificate for filing.

Electronic Signature of Creditor or Authorized Representative: EYAL BERGER



Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 11 of 45

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61555-CIV-ALTONAGA/Simonton

NATIONAL MARITIME
SERVICES, INC.

        Plaintiff,

vs.

GLENN F. STRAUB and BURRELL
SHIPPING CO., LLC,

        Defendants.

_____/

## AFFIDAVIT IN SUPPORT OF PLAINTIFF'S MOTION TO COMMENCE PROCEEDINGS SUPPLEMENTARY

STATE OF FLORIDA      )
                           )SS
COUNTY OF BROWARD  )

I, Eyal Berger, being duly sworn, depose and say as follows:

1.      My name is Eyal Berger.  I am over twenty-one years of age and competent to testify to the statements set forth in this Affidavit.  I am a citizen of the United States.  I make this Affidavit based on my own personal knowledge obtained through the course of my employment with Akerman Senterfitt, P.A. and my role as attorney to Plaintiff, National Maritime Services, Inc. ("**National Maritime**"), in the above-style action.

2.      This Affidavit is submitted in support of the Motion to Commence Proceedings Supplementary (the "**Motion**") filed by National Maritime in the above-styled action pursuant to Rule 69 of the Federal Rules of Civil Procedure and Section 56.29, Florida Statutes.

3.      On July 19, 2011, this Court entered a Final Judgment in favor of National Maritime and against Defendant Burrell Shipping Company, LLC ("**Burrell Shipping**") in the amount of

{22648694;2}



Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 12 of 45

$99,660.05, plus interest (the "**Judgment**") (D.E. 59).

4.     National Maritime, as judgment creditor, obtained a Writ of Execution in an effort to collect on the Judgment (the "**Writ of Execution**").  A true and correct copy of the Writ of Execution is attached to the Motion as Exhibit "**A**."

5.     The execution  remains unsatisfied and is valid and outstanding.

6.     On August 10, 2011, a Judgment Lien Certificate was issued by the Florida Secretary of State.  ").  A true and correct copy of the Judgment Lien Certificate is attached to the Motion as Exhibit "**B**."

7.     As a result, National Maritime is entitled to proceedings supplementary.

FURTHER AFFIANT SAYETH NAUGHT.


Eyal Berger, Affiant


STATE OF FLORIDA                    )
                                    ) ss:
COUNTY OF BROWARD                    )

The foregoing instrument was sworn to and subscribed before me this ____ day of November, 2011, by Eyal Berger, who is: ☒ personally known to me ☐ produced _____ as identification.


NOTARY PUBLIC, STATE OF FLORIDA

Jeanette Martinez
(Print, Type or Stamp Commissioned Name of Notary Public)

JEANETTE MARTINEZ
MY COMMISSION # DD 916034
EXPIRES: December 9, 2013
Bonded Thru Notary Public Underwriters

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 13 of 45

Page 1

1           UNITED STATES BANKRUPTCY COURT
            SOUTHERN DISTRICT OF FLORIDA
2
        Case No.  10-61555-CIV-ALTONAGA/Simonton
3
4    NATIONAL MARITIME SERVICES, INC.
5         Plaintiff,
6    vs.
7    GLENN F. STRAUB and BURRELL
     SHIPPING COMPANY, LLC,
8
          Defendants.
9    _____/
10
11
12              AKERMAN SENTERFITT
            222 Lakeview Avenue, Suite 400
13           West Palm Beach, Florida 33401
             Thursday, September 8, 2011
14             9:45 a.m. to 12:50 p.m.
15
16
17
                    DEPOSITION
18
                       OF
19
                GLENN F. STRAUB
20
             taken pursuant to notice
21            on behalf of the Plaintiff.
22              -  -  -  -  -
23
24
25

**ORIGINAL**

EXHIBIT

"D"

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 14 of 45

Page 4

```
 1    personally, to Burrell Industries.  This was the

 2    source of the funds, then, that Burrell Industries in

 3    turn used to loan the money to Burrell Shipping.

 4              MR. BERGER:  Understood.

 5    BY MR. BERGER:

 6       Q   Well, why don't we start off with --

 7       A   So to answer that question, I was teasing

 8    you, every week, but pretty sure, very close to every

 9    month that I'm either involved with a deposition or

10    somebody is deposing me.

11       Q   So you're very familiar with the rules of a

12    deposition.

13       A   Correct.

14       Q   I will ask you a question.  If you don't

15    understand it for any reason, you can ask me to

16    rephrase, and I will do my best to clarify it.  Please

17    wait until I finish asking the question before you

18    answer, so that the court reporter can type everything

19    that we say down.  Don't respond with a gesture.

20    Please respond verbally, yes, no, or the response, so

21    that she can take the deposition down.

22              What is your position with Burrell Shipping

23    Company, LLC?

24       A   President and chief operating officer.

25       Q   And when was Burrell Shipping Company
```

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 15 of 45

Page 13

1    A    I don't know.  I don't know.  Sometimes

2  they're done simultaneously and sometimes they're done

3  afterward.

4         When you go to an auction, if you're not

5  familiar with it, from what I can remember of that

6  particular one, is that you bid, and most likely, I

7  don't think the company was formed until after that

8  time period, so you just kind of bid and you assign

9  things, because it's not official until the bankruptcy

10 judge approves something anyway, so you're kind of in

11 limbo for some time period, and this one was in limbo

12 for two or three weeks at least.

13   Q    All right.  Well, prior to the acquisition of

14 the Island Adventure, did Burrell Shipping own any

15 other assets?

16   A    I don't believe so.  I think it was a newly

17 formed corporation, and that's just guesswork on my

18 part.  Sometimes companies have assets and then they

19 change their name, but I think this was a pretty clean

20 company.  It was just formed about that time period.

21   Q    Okay.  So it didn't have any assets prior to

22 acquiring the ship?

23   A    Not that I can recall.

24   Q    And prior to obtaining the loan from the

25 proceeds from Burrell Industries, did Burrell Shipping

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 16 of 45

Page 15

1   its expenses, would you be the one to authorize the

2   payments of those expenses?

3       A   Which company?

4       Q   Burrell Shipping.

5       A   I would be a hundred percent of the person to

6   approve those types of bills --

7       Q   And how would --

8       A   -- because I was the operating officer.

9       Q   And how would you go about paying any of

10  those bills if Burrell Shipping didn't have its own

11  bank account?

12      A   We would borrow money, Burrell Shipping would

13  borrow money from Burrell Industries.

14      Q   And would the payment to any vendor be made

15  directly by Burrell Industries on behalf of Burrell

16  Shipping?

17      A   No.  I think there's somebody in the company

18  that probably could tell you how -- or you can request

19  copies of checks.  We have -- attached to documents we

20  gave you all the checks, all checks that I know came

21  out of that company.  You know, I think there's -- I

22  saw three pages of checks to pay $6 million worth of

23  bills, and in doing so, they had to get the money

24  from -- since Burrell Shipping didn't have any money,

25  and the company never got put in operation, then it

Page 28

1    bills.

2    BY MR. BERGER:

3        Q    Now, you testified that you loaned $3.2

4    million to Burrell Industries --

5        A    Correct.

6        Q    -- who in turn loaned 3.2 million to Burrell

7    Shipping?

8        A    I believe proximately the same amount.  Maybe

9    it's the exact amount.  Maybe it's -- maybe they

10   needed enough money to open up a checking account, you

11   know, I don't know.

12       Q    And the $3.2 million that Burrell Industries

13   loaned to Burrell Shipping, what did Burrell Shipping

14   use that S3.2 million for?

15       A    Buy a vessel called Island Adventure.

16       Q    And how did Burrell Shipping come to know

17   Burrell Industries?

18           MR. GALLE:  Objection, form.

19           THE WITNESS:  Same owners of the stock.

20   BY MR. BERGER:

21       Q    Who owns Burrell --

22       A    I own Burrell Industry stock, and I would own

23   if there is a -- I don't know if it's a stock --

24   Burrell Shipping is a stock ownership or a -- there's

25   probably a legal term for a member-owned company.

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 18 of 45

Page 34

1   because I believe their asset would be that they would

2   go out and be the operating -- keeping an eye on the

3   vessels that they are buying.  In other words, they've

4   been around for a long time.  Burrell Shipping has not

5   been around for a long time.

6            I believe that Burrell Industries knows

7   enough about business over 30-some years of being in

8   business, that they'll keep an eye on the asset that

9   they are buying, so I would think that the collateral

10  would be the note that they have with Burrell

11  Shipping.

12       Q   But Burrell Industries didn't -- did they

13  execute a mortgage in your favor that you're aware of?

14       A   I think you gotta get with the -- that's

15  attorney/client privilege.  I don't even get involved

16  with the legal.  I just tell them what's happening,

17  and then the attorneys protect us.

18            MR. GALLE:  Well, do you know if they did,

19  without --

20            THE WITNESS:  Yeah, I don't know --

21            MR. GALLE:  -- speculating?

22            THE WITNESS:  -- sitting right here.  I'd be

23  speculating.

24  BY MR. BERGER:

25       Q   Well, did you ask for any collateral to be

Page 35

1   put up by Burrell Industries?

2      A    I just answered that question about two

3   minutes before.  The collateral would have been, they

4   were going out buying a vessel, somebody was, and so

5   they turned -- Burrell Industries turned around and

6   lent the money to Burrell Shipping, and Burrell

7   Shipping was buying a boat, and I would think that

8   there would be a note back to Burrell Industries,

9   which would protect me for my loan that I'm giving.

10  But I must be not the smartest person in the world,

11  because I didn't get paid back.  Your client got a lot

12  more money than I ever got back.

13     Q    Who are the existing creditors of Burrell

14  Shipping?

15     A    Let's hope we don't owe people.  I mean, I

16  don't consider you guys as being a creditor.  That's

17  some form of a judgment.

18         Now, I know there's a lot of people going

19  after your clients, because I'm one of them, but that

20  will be in a different suit, and I think they are

21  aware of that.  We got dismissed, and we'll be coming

22  after them, so there will probably be a creditor

23  meeting.  Your client will be a creditor, but I'm

24  also -- there's something going on personally, because

25  they sued me personally, which they should never have

Page 36

1  done, and it got dismissed, so I don't know what

2  creditors you're talking about, like --

3      Q    Well, does Burrell Shipping owe anybody any

4  money?

5      A    Other than this litigation going on that

6  we're here having this deposition on, I don't believe

7  they do, unless they have --

8      Q    So does Burrell Shipping not owe Burrell

9  Industries --

10     A    I'm just saying, there could be something for

11 a credit card bill that might be outstanding, and I

12 don't even know that, that maybe didn't get paid, but

13 nothing under 10,000 -- under a thousand dollars.

14 Whatever it would be would be under a thousand

15 dollars.

16     Q    Well, who would know --

17     A    Well, I wouldn't -- I don't know.

18     Q    -- the trade payables?

19     A    No, I don't know that there is.  I'm saying

20 there isn't --

21     Q    But I'm saying who would know if there was?

22     A    I would know, because somebody would have

23 asked me to pay a bill, and I haven't been asked to

24 pay a bill, so I know there isn't any bills, but I'm

25 saying just in case, I don't want to make statements

Page 44

1  off to get the document, and it shows from -- bam,

2  bam, bam, bam, bam, every date and how much money we

3  spent and everything, to whom.

4      Q   Right.  But where did Burrell Shipping get

5  the funding to make those three to four --

6      A   Asked and answered.  I'll say it one more

7  time.  They get all their money from Burrell

8  Industries.

9      Q   Okay.  So they didn't have any of their own

10  cash?

11      A   I think they were just formed, I told you.

12      Q   Okay.  After they were formed, did Burrell

13  Shipping ever generate its own revenues?

14      A   No, because we ran into a snag the first day

15  that we took it over.

16      Q   And what was that snag?

17      A   I just explained to you about the Port of

18  Everglades kept moving the vessel, without permission,

19  around the port and charging like $15,000 a day in

20  moving it, besides charging three, 4,000 a day for

21  just leaving it sit there.

22      Q   And Burrell Industries would make loans to

23  Burrell Shipping to pay off those port charges?

24      A   Yes.  I believe that's the procedure.

25      Q   Do you recall how much those port charges

Page 45

1   were?

2       A    Ah, nah, you can probably get it.   Whatever

3   their standard rate is.   It's a couple bucks a foot or

4   something, or -- and it's figured to multiply it by

5   550 feet, whatever their charge -- we didn't mind

6   paying that, because that's what we would have paid in

7   Miami or paid in Palm Beach, but we didn't want to put

8   a 52-man crew on it to start it up to run it from

9   point A to point B, where the Bahamian government

10  would let us tow it over there.

11      Q    Did there come a time where Burrell Shipping

12  sold the Island Adventure?

13      A    Yes.

14      Q    And who did they sell it to?

15      A    I don't know the guy's name, some Indian guy.

16      Q    And what were the sale proceeds that they got

17  for selling the vessel?

18      A    Like $2.3 million or something.

19      Q    And what did Burrell Shipping do with the

20  $2.3 million of --

21      A    Pay back part of three point -- part of the

22  $6.6 million that it owed.

23      Q    That it owed to who?

24      A    To Burrell Industries.

25      Q    And how is that transfer accomplished?

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 23 of 45

Page 52

1    know that first question.

2         Your question should be, when do you think I

3    was of knowledge of the lawsuit?  And then you can

4    back into it, but I don't remember.  You'd have to

5    show me a document or something.  It's like saying,

6    when was your dog's birthday?  I can't remember when

7    my dog's birthday, but I can probably look on his

8    collar and find out, so I don't know when we would

9    have been sued, and would it even come to me.

10        Q    Well, who would it have come to?

11        A    Probably the lawyers.  It's a legal kind of

12   question.  I'm in operations.

13        Q    And after a lawsuit, do your lawyers not make

14   you aware of legal proceedings?

15        A    Yeah, well, on something that small, probably

16   wouldn't.  You're talking about under $200,000 or

17   something like that, and I hope that I have other

18   things going on in my companies that -- I'm busy in

19   losing $4 million on this boat, so that takes a lot of

20   knowledge to lose $4 million.

21        Q    Well, were you aware that National Maritime

22   was seeking repayment from Burrell Shipping prior to

23   the date of the sale?

24        A    I'm glad you asked that one.  You might have

25   put your foot into something.  I never remembered this

Page 53

1   up until when you asked that question, but you gotta

2   do what you gotta do.  I had kind of a little bit of

3   deal with your people.  We sold it and got our money

4   out of it, they could have their money, because we

5   knew that they were ridiculous bills that they sent

6   us.  That's one of the reasons why the court finally

7   resolved that they were ridiculous bills.  I think

8   they sued for a whole bunch more money, and the court

9   came down and said only this amount of money is owed.

10   So that's why, by you reminding me, I did have

11   discussions with officers and employees of your

12   client.

13       Q    So prior to the sale, you were aware that

14   some type of repayment demand from National Maritime

15   existed?

16       A    Well, I don't know if you call it a demand.

17   I think they wanted me to pay for mistakes that they

18   made, and if you call that a demand, I call it

19   silliness, and that's what I told them.  That's why

20   they took two years on a bill to even do it, because

21   they knew they were silly bills.  Why else would your

22   client wait two years to even try to collect money,

23   until after the boat is sold, because there,

24   obviously, had to be arrangements made before that

25   time period that we all kind of agreed that if I can

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 25 of 45

Page 54

1    get out of it, they can get out of it.

2       Q    And these arrangements were discussed prior

3    to the sale of the boat?

4       A    Yeah, to Baukie Aukie (phonetic), I think his

5    name is, the owner of the company -- whew, you have to

6    help me out here.

7       Q    What was the content of those discussions?

8    Meaning, what were the negotiations?

9       A    It was always that if I can get out of it, if

10   we can find a home for it and get some uses out of the

11   boat, and even they are kind of ridiculous bills, if

12   I'm doing a lot of this for charity, then I can make

13   things happen.

14      Q    So when you say "get out of it," what do you

15   mean by that?  Can you elaborate?

16      A    Well, I had -- whatever I had in it.  I never

17   keep track of what I had in it.

18      Q    Sure.

19      A    I had to keep a boat alive to at least get

20   whatever we got for it at the end, which was --

21   actually, the price of steel had gone up at that

22   particular time.

23      Q    So in your discussions, you negotiated what

24   type of deal with respect -- what was your

25   understanding, if you could get out of it the amount

Page 55

1    that Burrell Industries had into the ship, what --

2         A    Burrell Industries -- not Industries.

3    Burrell Shipping could have got some assistance out of

4    the United Nations, could have got some property from

5    Haiti by using the ship down there for housing or

6    workers -- because there's so much cholera in Haiti

7    that you don't want to keep the people that are there

8    to help onshore.  You want to keep them on a

9    quarantined vessel in the harbor or something.  That's

10   at least our idea.

11        Q    And if you are able to --

12        A    If I was able to do that, then I would

13   probably -- somebody maybe helped with some finance --

14   financialist would maybe help us absorb some of our

15   costs.  Just like the doctors down there to take care

16   of better hospitals than what hospital could do there.

17        Q    And in your negotiations, was there a plan to

18   use some of those proceeds, if you were able to strike

19   that deal, to pay back some of the National Maritime

20   bills; is that correct?

21        A    That's pretty much the understanding that I

22   had.  I don't know, you know, will your clients tell

23   you the truth or are they just going to tell you, "I

24   don't remember anything," so we'll depose them too.

25        Q    So prior to the sale, your understanding was

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 27 of 45

Page 56

1    if you could have worked out some type of deal --

2         A    Yeah.

3         Q    -- with Haiti that you would have used some

4    of the proceeds to repay --

5         A    Among other things, there's all kinds of

6    things --

7         Q    Sure.

8         A    -- maybe like right now, the price of steel

9    went up to $500.  China is buying steel right now.

10   That boat might have been -- might have got everybody

11   healed, but we didn't know that there was going to be

12   a world economy problem, and it's cheaper to buy steel

13   in the Bahamas and take it to China, and instead of

14   taking it to Indian, because China is paying a lot

15   more money right now, because it costs so much for --

16   raw materials had gone up to make steel.  Steel is not

17   just -- it's -- you've got to put iron and pigment and

18   aggregates and all kinds of other things with it, and

19   those things skyrocketed.  That's why China is paying

20   $500 for, right now, a ton, compare to -- and there's

21   quite a few tons in that ship.

22        Q    But I guess to narrow the scope, if Burrell

23   Shipping was successful in either getting, I guess, a

24   higher sales price or getting some type of

25   consideration for use of the boat --

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 28 of 45

Page 57

```
 1      A    Correct.

 2      Q    -- it was Burrell Shipping's intent to

 3   basically repay its creditors with the funds?

 4      A    No, that's what my offer was to those guys,

 5   your clients, is that that's why they held off for so

 6   many years, is because some way Glenn Straub has done

 7   this 50 times before, taking something and made

 8   something out of it, and so my donation of time to

 9   Burrell Shipping and the use of this might have turned

10   it into enough to pay its bills.  We obviously paid

11   six point, I think, six million dollars of bills, so

12   another hundred thousand dollars would have been

13   nothing if we could have done it, but we lost $4

14   million on this little thing, because it didn't

15   materialize.  If we probably would have waited another

16   year, we might have all got our money out of it?

17      Q    Whose decision was it to sell the Island

18   Adventure?

19      A    Hmm.  When is the -- you didn't ask when, so

20   you're just asking me who.  I guess I make all

21   decisions.  As far as chief operating officer, I make

22   the best decisions I can for these companies.

23      Q    And did you make the decision to sell it on

24   May 6, 2011?

25      A    I'm probably sure I did.
```

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 29 of 45

## SHIP'S MORTGAGE

SHIP'S MORTGAGE dated October 29, 2008.  Under 46 U.S.C. Sec. 31301, et seq., as amended securing a Promissory Note (the "Note") dated October 24, 2008.

This is a Preferred Ship Mortgage (the "Mortgage") on the vessel "Island Adventure" (the "Yacht") which is being created under Federal Law. The amount of the Mortgage as required to be shown by Chapter 313, Title 46 U.S. Code is the Loan Amount (i.e. Financed) of $3,200,000.00. This Mortgage also secures repayment of simple interest as it accrues or precomputed interest to appropriate prepayment credit and performance of Mortgage representations, warranties and promises.

1. **PARTIES:**

   Mortgagor:

   BURRELL SHIPPING COMPANY, LLC          100%

   The (sole owner) of the Yacht.

   Mortgagee:

   BURRELL INDUSTRIES, INC.          100%

The words I, me, mine, we and our mean everyone (individuals, partners or corporation) who sign this Mortgage as Mortgagor and, where applicable, any other Owner, and the personal representatives, successors and assigns of Mortgagor and any other Owner. The words you and your mean the Mortgagee and anyone who has Mortgagee's rights under this Mortgage. If this Mortgage is given by a corporation, the words it and its may also mean corporation.

2. **DESCRIPTION OF YACHT:** The Yacht covered by this Mortgage is described below and is not a tow boat, barge, scow, lighter, car float, canal boat or tank vessel of less than 25 gross tons, as such words as used in 46 U.S.C. Sec. 922.

NAME:     M/V ISLAND ADVENTURE

REGISTRATION NUMBER: IMO 7359486          PLACE OF REGISTRATION: PANAMA

3. **MULTIPLE MORTGAGORS:** Each person who signs this Mortgage as Mortgagor will be responsible for the full amount of the Debt and everything required of Mortgagor, unless specifically stated otherwise below.  You may sue one Mortgagor without joining or notifying any co-Mortgagor.  You do not have to notify one Mortgagor that another has defaulted under this Mortgage.  You may give one Mortgagor extensions to pay or change or release his responsibility without releasing any co-Mortgagor in the same way.  Each person who signs this Mortgage as an Other Owner makes all of the title warranties but none of the other promises.



Case 0:10-cv-61555-CMA  Document 62  Entered on FLSD Docket 11/18/2011  Page 30 of 45

4.     **MORTGAGE DEBT:** This Mortgage secures my obligations (the "Debt") now due or which may become due in the future to you under this Mortgage and under the Note which is now held by you, given by me as borrower to Mortgagee, as lender, to be secured by this Mortgage on the Yacht described above. Except as otherwise set forth in this Mortgage or the Note, in enforcing its rights and remedies under this Mortgage, Mortgagee shall look to Mortgagor or the Yacht for the payment of the indebtedness secured hereby and for the performance of the provisions hereof. This agreement by Mortgagee shall not be construed in any way so as to affect or impair the lien of this Mortgage or Mortgagee's right to foreclose hereunder as provided by law, or to limit or restrict any of Mortgagee's rights or remedies in any foreclosure proceedings or other enforcement of payment of the indebtedness secured hereby out of and from the security given therefor.

5.     **PROMISE TO PAY:** I will pay and perform the Debt as provided herein and in the Note.

6.     **GOVERNING LAW:** The parties have chosen federal law, including but not limited to 46 U.S.C. Section 30101, 31301 and the sections following in 46 U.S.C. Section 31301, et seq., as amended, to cover all of the provisions of this Mortgage. In particular, 46 U.S.C. Section 31322(b) covers the interest provisions of the Note and this Mortgage. If there are gaps in Federal Law as to non-interest provisions, and only to such extent, the law of the State of Florida shall govern this transaction.

7.     **MORTGAGE:** To secure the Debt, I mortgage to you the whole of the Yacht named above and further described in her last marine document identified above, together with: all masts, towers, boilers, cables, engines, machinery, sails, rigging, auxiliary boats, anchors chains, tackle, apparel, bowsprits, furniture, fittings, tools, pumps, radar and other electronic or other equipment and supplies, and all fishing and other attachments and accessories, now part of the Yacht or used in or on the Yacht or which may become part of the Yacht in the future, whether or not removed from the Yacht (all called the "Yacht"). If I am not a corporation and the Yacht was purchased primarily for my own non-business use, the lien of this Mortgage shall not cover any items added to the Yacht more than 10 days after the date of the Note that are not made a part of the Yacht. These excludable items, however, must be identified in writing for you or any appropriate court officer before any duly noticed resale of the Yacht. In any event, this Mortgage shall cover only items which may be mortgaged under the Ship Mortgage Act of 1920, as amended. Although you do not intend to cover any property other than a "vessel" as defined in 46 U.S.C. Section 31302, et seq., as amended, if a court says that this Mortgage does cover such other property ("Other Property"), then I can have the Other Property separately released from this Mortgage by paying .01% of the then outstanding balance of this Mortgage after any appropriate prepayment credit. Release of such Other Property from this Mortgage does not release it from any Security Agreement besides this Mortgage.

8.     **CITIZENSHIP:** I am, and shall continue to be, a citizen of the United States, until the Mortgage is fully paid.

9.     **RIGHT TO OWN AND OPERATE:** The Yacht is documented in my name under the laws

2

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 31 of 45

of the United States. I am the sole owner of the Yacht and shall remain entitled to own and operate the Yacht under her marine document. If this Mortgage is given by a corporation, the corporation is properly incorporated and exists in good standing under the laws of the state of its incorporation.

**10.     MARINE DOCUMENT:** I shall maintain the marine document of the Yacht in full force and effect unless waived by Mortgagee.

**11.     SIGNING AUTHORIZATION AND VALIDITY:** I (or, if this Mortgage is given by a corporation, the Board of Directors of the corporation) have signed or authorized and directed the signing of all papers and taken all actions necessary for the signing and delivery of this Mortgage, the Good Faith Affidavit (which appears at the bottom of this Mortgage) and the Note which created the Debt secured by this Mortgage. The Note and Mortgage are valid and enforceable.

**12.     NO PRIOR LIENS:** I lawfully own and possess the Yacht free from all prior liens and encumbrances, except for the lien of this Mortgage.

**13.     TITLE WARRANTY:** I warrant title to the Yacht. This means that I am responsible for your expenses or losses if anyone else successfully claims an interest in the Yacht or any part of it.

**14.     RISK OF LOSS:** Damage, destruction or other loss of the Yacht will not release me from my obligations to you. I will let you know as soon as I can if the Yacht becomes damaged or destroyed or disappears.

**15.     INSURANCE AND NOTICE OF LOSS:** Until I have paid the Debt in full, I will insure the Yacht at all times for its full insurable value (what it is actually worth, unless you require replacement cost) up to amount I owe you under this Mortgage. The Yacht must be insured against fire, theft, collision, liability to others for property damage, damage caused by water and weather conditions, and such other hazards as you may reasonably ask me to cover. The insurance company must be reasonably acceptable to you. Such insurance must protect you as well as me. Such insurance must name you and/or your assigns as Mortgagees and additional insureds and further provide that assigns as Mortgagee and additional insured and further provide that assigns as Mortgagees and additional insureds and further provide that policy(ies) may not be canceled without the insurance company providing you and/or your assigns with ten (10) days prior written notice. The insurance policy must be written for at least one year at a time. I must pay the premium in advance at the beginning of the policy year. I must give you a bill from the insurance company or its agents or a copy of the declaration sheet of the policy for the new period showing the dollar limits, premiums marked: Premium Paid, names of insured and all additional insured and the cancellation notice provision described above. I have authorized the insurance company to pay any loss to you. You may use the proceeds of the insurance either to repair the Yacht or to make payments under this Mortgage. You may sign any proof of loss and endorse any check, draft or other form of payment issued by the insurance company or its agent as a loss payment. If I do not have the insurance either at closing or at any time after the closing, you may buy insurance to protect you and me or yourself only, and I will pay the premiums at your request. Mortgagee may waive the right to insurance.

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 32 of 45

16.     **USE OF THE YACHT:** After the date hereof, I will not sell the Yacht, pledge it as security for another loan, give it away, lease it or charter it without your written permission. I will not use the Yacht or permit its use for any illegal purpose or let anyone seize the Yacht. I will not salvage the Yacht (anyone who tows or raises a vessel has a maritime lien on the vessel which is called a "salvage lien"). If I take the Yacht to another country, I will comply with the laws of such country and with any treaty between the United States and such country.

17.     **LOCATION OF YACHT:** I will not, without your prior written approval, remove the Yacht from its homeport or anchorage shown above other than voyages with the intent of returning. I will inform you of any different winter storage location or of any change of my residence. I will not abandon the Yacht.

18.     **DISPLAY OF MORTGAGE ON YACHT:** I will prominently display the marine document and completed copy of the Mortgage with the Yacht's papers in the pilot house, if any, charter room or master's cabin. I will show them to all persons having business with the Yacht and to you upon demand.

19.     **BILLS AND TAXES:** I shall pay when due, any repair bills, storage bills, taxes, fines or other charges on the Yacht. You may pay any of these bills, if I do not. If you do, I will repay you on demand, with interest at the Loan Rate(s) in effect under the Note from time to time.

20.     **CARE OF THE YACHT:** I will keep the Yacht in good condition and repair.

21.     **GOVERNMENT SEIZURE:** I will notify you promptly by telephone, confirmed by telegraph or cable if the Yacht is libeled, attached, detained, seized or levied upon or taken into custody by any court or authority. I will immediately take steps to have the Yacht released. If the Yacht is arrested or detained by any government authority, I authorize you or your agents in my name to receive or take possession of the Yacht and defend any action and/or discharge my lien.

22.     **INSPECTION OF YACHT AND BOOKS:** I will at all times let you inspect the Yacht and its cargoes and papers and examine my related accounts and records; and shall tell you quarterly and, if you request, monthly, that all wages and all other claims which might have created a lien on the Yacht have been paid.

23.     **FURTHER ASSURANCES:** From time to time, I shall sign and deliver to you any documents and assurances that you or your attorney may require to maintain priority of this Mortgage. FINANCIAL REPORTING: If this Mortgage is given by a business entity, it will give you annual and other periodic financial reports that you may reasonably request.

24.     **LATE CHARGES, ATTORNEY'S FEES AND COURT COSTS:** I agree to pay any late charges that become due under the Note, and attorney's fees, court costs, and any other expenses, losses, charges, damages incurred or advances made by the Mortgagee in the protection of its rights or caused by Owner's default hereunder or under the Promissory Note secured hereby.

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 33 of 45

25.  **DEFAULT, ACCELERATION AND REPOSSESSION: (A) DEFAULT:** I will be in default if: (a) I have made a false or misleading statement about any important fact in this Mortgage or in the related Note : or (b) I do not make any payment when due; or (c) I die; or (d) I become insolvent; or (e) I file for bankruptcy or similar relief or creditors file for bankruptcy against me, or I let someone put a lien on the Yacht; or (f) the Yacht lessens in value or becomes valueless other than through normal depreciation. FOR CORPORATE MORTGAGOR: If this Mortgage is given by a corporation. you may also request full payment if shares of its capital stock are sold or transferred to anyone who was not a guarantor of the obligation secured by this Mortgage at the time the Note was signed, or if the corporation ceases doing business as a going concern or makes an assignment for the benefit of creditors, liquidates substantially all of its assets or files for dissolution. **(B) ENTIRE BALANCE DUE:** (1) If I am in default, you may require that the unpaid balance of the amount financed be paid in full with accrued interest; but no repayment credit is required because interest is not computed in advance for the term of the Debt unless the Note provides for such penalty. (2) In the case of a declaration of default and demand for payment in full, or after maturity of the Promissory Note, the unpaid balance shall bear interest at the interest rate applicable under the Promissory Note. (3) In the case of a judgment, interest on the unpaid balance of the judgment will be payable at the rate of interest applicable under the Promissory Note, or if not permitted by law, at the highest lawful rate of interest under the laws of the State of Florida. **(C) REPOSSESSION:** You have the right to repossess the Yacht without a Court Order, if I default under the Note or this Mortgage. Otherwise, you have the right to foreclose in Federal Court under the maritime laws of the United States. You may demand that I assemble the Yacht and all equipment covered by the Mortgage. **(D) EFFECT OF REPOSSESSION:** Provided that your repossession of the Yacht is accomplished without a breach of the peace, I agree to waive all defenses available to me under the Uniform Commercial Code or other applicable laws pertaining to such repossession.

26.  **REDEMPTION:** I have the following rights of redemption: If you repossess the Yacht, I can get it back (redeem it) by paying all past due installments, including accrued interest, (b) any late charges, collection expenses and attorney's fees, and (c) your cost of taking the Yacht (including moving, storage, and similar expenses) and when I redeem it, unless you demand the full net balance, my right to redeem it in such case will end when the repossessed Yacht has been sold. You agree to provide me with notice of any repossession sale by mailing such notice at the address indicated in this Mortgage.

27.  **RESALE CREDIT:** If you resell the Yacht, any late charges, costs of taking the Yacht, storage, costs of sale (cleaning, repairing, auctioneer's fee, marshal's fees, if any, sales commissions, if any, and advertising), cost of insurance, allowable attorney's fees and court costs will be subtracted from the price at which the Yacht is sold after repossession. The difference, if any, would be my Resale Credit.

28.  **NO WAIVER OF RIGHTS:** You may delay in enforcing any of your rights without losing them.

29.  **RECEIVER:** In any legal action, you may have a receiver appointed for the Yacht and its

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 34 of 45

earnings. Any receiver shall have full rights and powers to use and operate the Yacht and obtain a court decree ordering and directing the sale or other disposition of the Yacht.

**30.    USE OF THE YACHT BY OWNER:** Unless I violate this Mortgage and you repossess the Yacht, I shall be permitted to retain actual possession and use of the Yacht, except as otherwise set forth herein.

**31.    TIME IS OF THE ESSENCE:** This means that all payments which are required must be made on the day due. Except as provided in Section 25 above, there are no grace periods provided in this Mortgage. If I require additional time to make a payment, I understand that I must obtain authorization or approval for making a late payment in writing in advance.

**32.    ADDITIONAL SECURITY:** This Mortgage is given as additional security to my Debt.

**33.    INVALID PROVISIONS:** If any provision of this Mortgage cannot be enforced, the rest of the Mortgage will stay in effect.

**34.    AMENDMENTS:** Any change in terms of this Mortgage must be made in writing and signed by you and me.

**35.    CONDITION OF THE YACHT:** I hereby acknowledge that neither you nor any of your agents or assigns have made any representations, oral or written, of any nature pertaining to the Yacht or its operation. I further acknowledge that neither you nor your assigns manufactured the Yacht; therefore, in the event of any legal proceeding filed by you arising out of the Note or Mortgage, I waive any and all defenses available to me at law against you, your agents or assigns arising out of the manufactured sale or operation of the Yacht.

**ON THE DAY** and year written at the beginning of this Mortgage, I have signed this Mortgage, or if a corporation, caused this Mortgage to be signed in the corporation name and sealed (if a corporation seal has been adopted) by its property corporate officers who were properly authorized to do so.

Witnesses:

Signature

Printed Name: CRAIG T. GALLE

Signature

Printed Name: Doug Lee Moschiano

By: _____

Sal V. Spano, Vice President

6

Burrell Shipping Company, LLC
11199 Polo Club Road
Wellington, FL

May 6, 2011

Craig T. Galle, Esq.
The Galle Law Group, P.A.
13501 Southshore Blvd. #103
Wellington, FL 33414

Re: Purchase and sale of the M/V Island Adventure

Dear Mr. Galle.

This letter will serve as Seller's instruction pursuant to Clauses 2 & 3 of the Memorandum of Agreement dated April 5th between Burrell Shipping Company, LLC, as Seller and Exim, Inc., as Buyer. Please release the funds you are holding in escrow which total Two Million Two Hundred Forty-Nine Thousand ($USD2,249,000.00) to Burrell Shipping Company, LLC.

Sincerely,

Burrell Shipping Company

By: _____
Glenn F. Strand,
Manager/Director

EXHIBIT
"F"

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 36 of 45

FAX:15617981705                    Sep 6 2011 12:23    P001/025

 

**Bank of America**

PAGE 1 OF 1
BANK OF AMERICA, N.A.
WIRE TRANSFER ADVICE
1 FLEET WAY          PA6-580-04-
SCRANTON, PA         18507

WX 0000    000 559 005443 #001 AT 0.365
GLENN F. STRAUB

DATE: 05/06/11
DIRECT INQUIRIES TO:
800.729.9473 OPTION 2

THE FOLLOWING WIRE HAS CREDITED TODAY:

TRANSACTION REF:
ORIGINATOR:      FLORIDA IOTA TRUST ACCOUNTS

PAYMENT DETAIL:

EXHIBIT
"G"

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 37 of 45

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61555-CIV-ALTONAGA/Simonton

NATIONAL MARITIME
SERVICES, INC.

        Plaintiff,

vs.

GLENN F. STRAUB and BURRELL
SHIPPING CO., LLC,

        Defendants.

_____/

## COMPLAINT TO RECOVER FRAUDULENT TRANSFER OF PROPERTY

National Maritime Services, Inc. ("**National Maritime**" or the "**Plaintiff**"), by and through undersigned counsel and pursuant to Chapter 726, Florida Statutes, hereby sues the defendant, Glenn F. Straub ("**Straub**" or the "**Defendant**") to avoid and recover fraudulent transfers of property, and in support states as follows:

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1333, Fed. R. Civ. P. 9(h), Fed. R. Civ. P. 69 and Fla. Stat. § 56.29.

2.     Venue is proper pursuant to 28 U.S.C. § 1408 and Fed. R. Civ. P. 69.

3.     This is a proceedings supplementary initiated by National Maritime pursuant to Rule 69 of the Federal Rules of Procedure and Section 56.29, Florida Statutes, to avoid and recover fraudulent transfers of property pursuant to Chapter 726 of the Florida Statutes and Section 56.29, Florida Statutes.



**EXHIBIT "H"**

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 38 of 45

## PARTIES

4.       National Maritime is a Florida corporation with its principal place of business in Broward County, Florida.

5.       The judgment debtor, Burrell Shipping Co., LLC ("**Burrell Shipping**" or the "**Judgment Debtor**") is a Florida limited liability company with its principal place of business in Palm Beach County, Florida.

6.       Upon information and belief, Straub resides in Palm Beach County, Florida.

## FACTUAL BACKGROUND

7.       On August 24, 2010, National Maritime initiated the above-styled action in this Court against Straub and Burrell Shipping, alleging, *inter alia*, breach of contract and unjust enrichment for unpaid services rendered.  (D.E. 1).

8.       On July 19, 2011, this Court entered a final judgment (the "**Final Judgment**") against Burrell Shipping in favor of National Maritime.  A true and correct copy of the Final Judgment is attached hereto as Exhibit "**A**."  The Final Judgment ordered that National Maritime recover a total of $99,660.05 plus interest from Burrell Shipping.

9.       On September 28, 2011, the Clerk of Court for the Southern District of Florida issued a writ of execution (the "**Writ of Execution**"), a true and correct copy of which is attached hereto as Exhibit "**B**."  The Writ remains unsatisfied and is valid and outstanding.

10.       National Maritime served Burrell Shipping with discovery requests in aid of execution as well as noticed a deposition in aid of execution of the corporate representative for Burrell Shipping.  The corporate representative who appeared for Burrell Shipping was Straub.

{22644588;2}

- 2 -

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 39 of 45

11.     Straub is the President and Chief Operating Officer for Burrell Shipping.

12.     On or about September 2008, Straub placed a bid in bankruptcy court to purchase a casino boat (the "**Boat**") named "Island Adventure." Straub then transferred $3.2 million to Burrell Industries, Inc. ("**Burrell Industries**"). Straub did not secure any collateral for this transfer.

13.     On October 29, 2008, Burrell Shipping, as mortgagor, entered into a mortgage agreement (the "**Mortgage**") with Burrell Industries, as mortgagee, to borrow $3.2 million in order to purchase the Boat. A true and correct copy of the Mortgage is attached hereto as Exhibit "**C.**"

14.     On May 6, 2011, Burrell Shipping sold the Boat to a scrapper for the sum of $2.249 million (the "**Sale Proceeds**"). The Boat was Burrell Shipping's only asset.

15.     On that same day, May 6, 2011, Burrell Shipping wire-transferred the Sale Proceeds to Straub (the "**Transfer**"), despite the fact that the Mortgage was entered into by and between Burrell Shipping and Burrell Industries -- not Straub. A true and correct copy of the Transfer is attached hereto as Exhibit "**D.**"

16.     At the time of the Transfer, Burrell Shipping was indebted to National Maritime for unpaid services rendered, and was involved in litigation brought by National Maritime against Burrell Shipping and Straub as co-defendants, though the Final Judgment had not yet been entered.

17.     National Maritime has retained the undersigned attorneys to represent its interests herein and is entitled to recover its fees pursuant to § 56.29(11).

18.     National Maritime has performed all conditions precedent to the bringing of this action, or they have been waived.

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 40 of 45

## COUNT I
### Action to Avoid and Recover Fraudulent Transfer
### Pursuant to § 56.29 (6)(a), Florida Statutes

19.     National Maritime realleges and reincorporates the allegations in Paragraphs 1 through 18 as if fully set forth herein.

20.     National Maritime holds an unsatisfied judgment obtained under chapter 55 and has filed an affidavit with the Court so stating.  The execution is valid and outstanding.

21.     The Judgment Debtor transferred assets to Straub in the amount of $2.249 million.

22.     Pursuant to § 56.29(6)(a), Florida Statutes, Straub is an insider of the Judgment Debtor.

23.     The transfer of $2.249 million from the Judgment Debtor to Straub was a fraudulent transfer and made within one (1) year before service of process of the Judgment Debtor.

24.     Accordingly, pursuant to Section 56.29(6)(a), Florida Statutes, the Judgment Debtor an Straub have the burden of proof to establish that the transfer of said sums was not a fraudulent transfer under Florida law.

WHEREFORE, National Maritime respectfully requests this Court enter a judgment in its favor and against the Defendant (1) avoiding the Transfer, (2) allowing Burrell Shipping to recover the portion of the property transferred due and owing under the Final Judgment, (3) awarding National Maritime attorneys' fees and costs pursuant to Section 56.29(11), Florida Statutes, and (4) granting such other and further relief as the Court deems necessary and proper.

{22644588;2}

AKERMAN SENTERFITT, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL  33301-2999

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 41 of 45

## COUNT II
### Action to Avoid and Recover Fraudulent Transfer
### Pursuant to § 725.105(1)(a), Florida Statutes

25.     National Maritime realleges and reincorporates the allegations in Paragraphs 1 through 18 as if fully set forth herein.

26.     This is an action to avoid and recover a fraudulent transfer pursuant to Section 726.105(1)(a) of the Florida Statutes.

27.     Section 726.105(1)(a), Florida Statutes, provides:

(1)  A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a)  With actual intent to hinder, delay, or defraud any creditor of the debtor

28.     The Transfer was caused with the actual intent to hinder, delay, or defraud National Maritime.

29.     National Maritime is authorized to recover the portion of the property transferred owed it pursuant to the Final Judgment.

WHEREFORE, National Maritime respectfully requests this Court enter a judgment in its favor and against the Defendant (1) avoiding the Transfer, (2) allowing Burrell Shipping to recover the portion of the property transferred due and owing under the Final Judgment, (3) awarding National Maritime attorneys' fees and costs pursuant to Section 56.29(11), Florida Statutes, and (4) granting such other and further relief as the Court deems necessary and proper.

{22644588;2}

- 5 -

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 42 of 45

## COUNT III
### Action to Avoid and Recover Fraudulent Transfer
### Pursuant to § 726.105(1)(b), Florida Statutes

30.     National Maritime realleges and reincorporates the allegations in Paragraphs 1 through 18 as if fully set forth herein.

31.     This is an action to avoid and recover a fraudulent transfer pursuant to Section 726.105(1)(b) of the Florida Statutes.

Section 726.105(1)(b), Florida Statutes, provides:

(1)   A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(b)   Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

1.   Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

2.   Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

32.     Burrell Shipping received less than reasonably equivalent value in exchange for the Transfer.

33.     Burrell Shipping was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

34.     Burrell Shipping intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

35.     National Maritime is authorized to recover the portion of the cash transferred due and owing under the Final Judgment.

{22644588;2}

- 6 -

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 43 of 45

WHEREFORE, National Maritime respectfully requests this Court enter a judgment in its favor and against the Defendant (1) avoiding the Transfer, (2) allowing Burrell Shipping to recover the portion of the property transferred due and owing under the Final Judgment, (3) awarding National Maritime attorneys' fees and costs pursuant to Section 56.29(11), Florida Statutes, and (4) granting such other and further relief as the Court deems necessary and proper.

<u>COUNT IV</u>
**Action to Avoid and Recover Fraudulent Transfer**
**Pursuant to § 725.106(1), Florida Statutes**

36.     National Maritime realleges and reincorporates the allegations in Paragraphs 1 through 18 as if fully set forth herein.

37.     This is an action to avoid and recover a fraudulent transfer pursuant to § 726.106(1) of the Florida Statutes.

Section 726.106(1), Florida Statutes, provides:

(1)   A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

38.     Burrell Shipping received less than reasonably equivalent value in exchange for the Transfer.

39.     Burrell Shipping was insolvent at the time of the Transfer, or became insolvent as a result of the Transfer.

40.     National Maritime is authorized to recover the portion of the cash transferred due and owing under the Final Judgment.

WHEREFORE, National Maritime respectfully requests this Court enter a judgment in its favor and against the Defendant (1) avoiding the Transfer, (2) allowing Burrell Shipping to

{22644588;2}

- 7 -

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 44 of 45

recover the portion of the property transferred due and owing under the Final Judgment, (3) awarding National Maritime attorneys' fees and costs pursuant to Section 56.29(11), Florida Statutes, and (4) granting such other and further relief as the Court deems necessary and proper.

<u>COUNT V</u>
**Action to Avoid and Recover Fraudulent Transfer**
**Pursuant to § 725.106(2), Florida Statutes**

41.     National Maritime realleges and reincorporates the allegations in Paragraphs 1 through 18 as if fully set forth herein.

42.     This is an action to avoid and recover a fraudulent transfer pursuant to § 726.106(2) of the Florida Statutes.

Section 726.106(2), Florida Statutes, provides:

(2)  A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

43.     Straub is an insider.

44.     The Transfer was made to Straub for an antecedent debt.

45.     Burrell Shipping was insolvent at the time of the Transfer

46.     Straub, as owner and principal, had reasonable cause to believe that Burrell Shipping was insolvent.

47.     National Maritime is authorized to recover the portion of the cash transferred due and owing under the Final Judgment.

WHEREFORE, National Maritime respectfully requests this Court enter a judgment in its favor and against the Defendant (1) avoiding the Transfer, (2) allowing Burrell Shipping to recover the portion of the property transferred due and owing under the Final Judgment, (3)

{22644588;2}

AKERMAN SENTERFITT, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

Case 0:10-cv-61555-CMA   Document 62   Entered on FLSD Docket 11/18/2011   Page 45 of 45

awarding National Maritime attorneys' fees and costs pursuant to Section 56.29(11), Florida Statutes, and (4) granting such other and further relief as the Court deems necessary and proper.

Dated: November 18, 2011

**AKERMAN SENTERFITT**
*Attorneys for Plaintiff*
350 East Las Olas Boulevard
Suite 1600
Fort Lauderdale, FL 33301
Telephone: (954) 463-2700
Facsimile:  (954) 463-2224


By: _____
     Jason Oletsky, Esq.
     Florida Bar No.: 009301
     Email: jason.oletsky@akerman.com
     Eyal Berger, Esq.
     Florida Bar No.: 11069
     Email: eyal.berger@akerman.com
     Tamara J. Savin, Esq.
     Florida Bar No.: 72758
     Email: tamara.savin@akerman.com

{22644588;2}