UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61555-CIV-ALTONAGA

**NATIONAL MARITIME SERVICES, INC.**,

    Plaintiff/Judgment Creditor,

vs.

**GLENN F. STRAUB** and **BURRELL SHIPPING COMPANY, LLC**,

    Defendants/Judgment Debtor,

and

**GLENN F. STRAUB**,

    Impleaded Defendant.
_____/

**ORDER SETTING FORTH FINDINGS**
**OF FACT AND CONCLUSIONS OF LAW**

These proceedings supplementary came before the Court for a non-jury trial on August 13 and 29, 2013.[1] The Court has carefully considered the testimony of the witnesses, the exhibits admitted in evidence, the parties' written submissions, and the applicable law. Based on its review of the record and pursuant to Federal Rule of Civil Procedure 52(a)(1), the Court makes the following findings of fact and conclusions of law.

    **I.    FACTUAL FINDINGS**

Since this suit was filed on August 24, 2010, National Maritime has been trying to have Defendants Burrell Shipping Company, LLC ("Burrell") and Glenn F. Straub ("Straub") pay it for management and custodial services National Maritime rendered at Defendants' request to the

---

[1] Transcripts of the trial are found in the Court's electronic docket at ECF Numbers 119 and 124. Specific citations to the transcripts are not provided in this Order except where quoted text is included.

M/V Island Adventure (the "Vessel"). (*See generally* Compl. [ECF No. 1]). Following a non-jury trial held in June 2011, the Court entered Final Judgment in favor of National Maritime and against Burrell on National Maritime's claims of breach of contract (Count II) and unjust enrichment (Count IV). (*See* Final Judgment [ECF No. 59]). The total awarded to National Maritime was $99,660.05. (*See id.* ¶ 2). National Maritime did not prevail on its claims against Straub individually. (*See* Order Setting Forth Findings of Fact and Conclusions of Law [ECF No. 57]).

On August 10, 2011, National Maritime obtained a Judgment Lien Certificate from the Florida Secretary of State. (*See* Mot. Supp. Proc., Ex. "B" [ECF No. 62]). The Clerk issued a Writ of Execution on September 28, 2011. (*See* [ECF No. 60]). After failing to collect its Final Judgment, National Maritime initiated these supplementary proceedings by filing a Complaint to Recover Fraudulent Transfer of Property ("Supplemental Complaint") (*see* Mot. Supp. Proc., Ex. "H"),[2] against Straub and Burrell pursuant to Federal Rule of Civil Procedure 69 and Florida Statute Section 56.29, to avoid and recover a fraudulent transfer of property. (*See* Supplemental Compl. ¶ 3). National Maritime seeks a judgment avoiding the transfer and allowing Burrell to recover from Straub the portion of the property transferred but owing under the Final Judgment. (*See id.* 5).

National Maritime proposes various theories for recovery of its Final Judgment from Straub and Burrell. Count I of the Supplemental Complaint is titled, "Action to Avoid and Recover Fraudulent Transfer Pursuant to § 56.29(6)(a), Florida Statutes." Count II is titled, "Action to Avoid and Recover Fraudulent Transfer Pursuant to § 725.105(1)(a), Florida Statutes." Count III is titled, "Action to Avoid and Recover Fraudulent Transfer Pursuant to §

---

[2] The Supplemental Complaint appears as Exhibit H to National Maritime's Motion to Commence Proceedings Supplementary and to Implead Third Parties Into Proceedings [ECF No. 62]. National Maritime never filed the Supplemental Complaint as a separate docket entry.

726.105(1)(b), Florida Statutes." Count IV is titled, "Action to Avoid and Recover Fraudulent Transfer Pursuant to § 725.106(1), Florida Statutes." Count V is titled, "Action to Avoid and Recover Fraudulent Transfer Pursuant to § 725.106(2), Florida Statutes."

The following are the facts stipulated to by the parties before the trial on the Supplemental Complaint. (*See* Joint Pre-Trial Stipulation [ECF No. 110]). National Maritime provides custodial services to commercial vessels. Straub is the president, chief operating officer, managing member, and sole owner of Burrell, and director and president of Burrell Industries. On October 29, 2008, the United States Marshal Service issued a Bill of Sale for the Vessel to Burrell, a Florida limited liability company.

Previously, on October 24, 2008, following the U.S. Marshal sale, the Court confirmed the sale of the Vessel to Straub. Straub loaned Burrell Industries $3.2 million by way of a promissory note ("Straub Note") dated October 24, 2008. On the same day, Burrell Industries in turn loaned the $3.2 million to Burrell by a second promissory note ("Burrell Industries Note"), as well as a third promissory note for $400,000.00 for the security deposit given the day of the Marshal sale (collectively the "promissory notes"). The Burrell Industries Note was secured by a ship's mortgage agreement dated October 29, 2008 granting Burrell Industries a secured interest in the Vessel.

On August 24, 2010, National Maritime initiated the underlying action against Straub and Burrell alleging breach of contract and unjust enrichment for the unpaid custodial services provided to the Vessel by National Maritime in October and November 2008. On May 6, 2011, during the pendency of this litigation, Burrell sold the Vessel to a boat scrapper for $2.249 million in a commercially reasonable manner. "[T]his was a classic short sale scenario where you had a sale of an asset, the proceeds of which would be insufficient to satisfy the debt." (Tr.

18, ll. 6–9 [ECF No. 124]). On May 6, 2011, Burrell directly wire-transferred the sale proceeds to Straub. Prior to the sale and subsequent transfer, Burrell and Straub had been sued by National Maritime. As stated, the Final Judgment in the underlying action was entered on July 19, 2011 in favor of National Maritime and against Burrell.

The following are the additional facts found by the undersigned based on the testimony and evidence presented during the two-day trial on the Supplemental Complaint. Burrell was formed in order to take title to the Vessel, a Panamanian vessel with Panamanian registration, and Burrell was initially undercapitalized. Burrell was capitalized by means of the Straub Note, Burrell Industries Note, and the October 24, 2008 $400,000.00 promissory note executed between Burrell Industries and Burrell. The promissory notes are identical in terms save for the identities of the parties and the amounts. The promissory notes contain no maturity dates and do not call for periodic payments. Prior to the transfer of the sale proceeds from the sale of the Vessel, no repayments had ever been made on any of the promissory notes.

Straub was not granted a security interest or any other rights in any of Burrell Industries' or Burrell's property, including the Vessel. The mortgage securing the Burrell Industries Note was a ship's mortgage. No documents evidence that the ship's mortgage was ever filed with the U.S. Secretary of Transportation. A certificate issued by the Panama Maritime Authority shows that as of May 5, 2011, the Vessel was free and clear of all liens and mortgages. Nevertheless, as testified to by attorney Craig Galle, counsel for Burrell involved in the limited liability company's formation and the sale of the Vessel, a ship's preferred mortgage existed in the United States although the mortgage was never recorded to give notice to the public of the existence of the mortgage.

Burrell failed to generate its own revenues and operated solely on loans or funds provided by its affiliate, Burrell Industries. The three loans were made to Burrell to allow it to purchase the Vessel at a Marshal's sale, under circumstances where Burrell would not have had sufficient time or the means to procure a loan elsewhere. Burrell did not have its own bank account and never engaged in any business other than the activities associated with trying to start a business with the Vessel.

At the time of the sale and transfer of the Vessel, Burrell owed approximately $6.6 million to Burrell Industries, and Burrell's liabilities exceeded its assets by at least $4 million. Also at the time of the sale and transfer, the buyer required title to the Vessel to be delivered by Burrell free and clear of any liens and encumbrances, which included a complete release of the mortgage held by Burrell Industries on the Vessel. The closing could not have occurred if Burrell Industries had not released the preferred ship's mortgage on the Vessel. And Burrell Industries would not release the mortgage without payment of the note owing by Burrell from the proceeds of the sale from the buyer. While the proceeds of the sale of the Vessel were insufficient to satisfy all sums due on the Burrell Note, Burrell Industries nevertheless agreed to a partial payment to release the mortgage on the Vessel.

Straub is an insider of the Judgment Debtor, Burrell, and its affiliate Burrell Industries, of which Straub is president and chief operating officer. As such, Straub controlled and received the transfer. Straub acknowledged,[3] "as president of Burrell Industries, I probably could have said, Pay those guys [National Maritime] first. I probably could have said that. I did not say that." (Tr. 64, ll. 21–23 [ECF No. 119]). Straub did not provide Burrell any consideration in

---

[3] Throughout Straub's testimony, the Court had to repeatedly instruct Straub to answer the questions asked of him, as he consistently failed to respond directly. In addition, Straub avoided answering difficult questions by professing ignorance of the matter or a lack of recollection, or alternatively, by saying others would know the answer but not he.

exchange for the transfer and conceded the transfer consisted of substantially all of Burrell's assets. At the time of the transfer, Straub was aware or should have been aware that Burrell's liabilities exceeded its assets, he was aware or should have been aware of the pending lawsuit against Burrell and himself, and he was aware or should have been aware that Burrell owed National Maritime in excess of $90,000.00.

National Maritime's president believes Straub orchestrated the transfer in an effort to prefer himself over National Maritime, but this opinion is not based on personal knowledge. Straub maintains the transfer was made to enable Burrell to comply with its contractual obligation to convey the Vessel to the buyer free and clear of the mortgage lien.

## II. COURT'S JURISDICTION

The Court has ancillary jurisdiction over these supplemental proceedings as National Maritime is seeking assets of the Judgment Debtor, Burrell, that are found in the hands of a third party, Straub. *See Peacock v. Thomas*, 516 U.S. 349 (1996); *Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2000) ("Since *Peacock*, most courts have continued to draw a distinction between post-judgment proceedings to collect an existing judgment and proceedings, such as claims of alter ego liability and veil-piercing, that raise an independent controversy with a new party in an effort to shift liability. Where the post-judgment proceeding is an effort to collect a federal court judgment, the courts have permitted judgment creditors to pursue, under the ancillary enforcement jurisdiction of the court, the assets of the judgment debtor even though the assets are found in the hands of a third party." (citations omitted)); *Reyes-Fuentes v. Shannon Produce Farm, Inc.*, No. 6:08-cv-59, 2012 WL 1557368, at *2 (S.D. Ga. May 2, 2012) ("Although the Eleventh Circuit has yet to rule on this particular issue, the majority of the

circuits to address it have concluded that post-judgment actions to avoid fraudulent conveyances fall within the court's ancillary enforcement jurisdiction." (citing cases)).

### III.   CONCLUSIONS OF LAW

"Proceedings supplementary are equitable in nature and should be liberally construed." *Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145, 150 (Fla. 4th DCA 1994) (citation omitted). "The procedure on execution — and in proceedings supplementary to and in aid of judgment or execution — must accord with the procedure of the state where the court is located . . . ." FED. R. CIV. P. 69(a)(1). Florida Statute Section 56.29 provides the procedural mechanism to assist judgment creditors in reaching the assets of judgment debtors, and the Uniform Fraudulent Transfer Act ("UFTA") has codified the law concerning what constitutes a fraudulent transfer. *Morton v. Cord Realty, Inc.*, 677 So. 2d 1322, 1324 (Fla. 4th DCA 1996). Under section 56.29(6)(a),[4] the defendant has the burden of proving a judgment debtor's transfer made within one year before service of process was not fraudulent. *Id.*; *see also Amjad Munim, M.D., P.A.*, 648 So. 2d at 153 ("Pursuant to section 56.29(6), the burden is on the transferee to prove the transfer was not fraudulent." (citation omitted)).

While National Maritime brings five claims for relief, the Court only addresses two of these, as they are dispositive of the relief National Maritime is seeking.

---

[4] Florida Statute Section 56.29(6)(a) states:

> When, within 1 year before the service of process on him or her, defendant has had title to, or paid the purchase price of, any personal property to which the defendant's spouse, any relative, or any person on confidential terms with defendant claims title and right of possession at the time of examination, the defendant has the burden of proof to establish that such transfer or gift from him or her was not made to delay, hinder, or defraud creditors.

      **A.     Count II: Florida Statute Section 726.105(1)(a)**

Count II alleges the transfer violates Florida Statute Section 726.105(1)(a). Under Section 726.105(1)(a), "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." To establish a "fraudulent conveyance" under Florida law, then, "the creditor . . . must demonstrate that there was (i) a creditor to be defrauded; (ii) a debtor intending fraud; and (iii) conveyance of property that could have been applicable to payment of the debt due." *In re PSI Indus., Inc.*, 306 B.R. 377, 387 (Bankr. S.D. Fla. 2003) (citing *Huntsman Packaging Corp. v. Kerry Packaging Corp.*, 992 F. Supp. 1439 (M.D. Fla. 1998); *In re Young*, 235 B.R. 666 (Bankr. M.D. Fla. 1999)).

"Creditor" refers to any person who has a claim. FLA. STAT. § 726.102(5). The creditor's "claim" is broadly defined by the UFTA as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." FLA. STAT. § 726.102(4). National Maritime was a creditor of Burrell under the UFTA at the time Burrell transferred the sale proceeds to Straub. *See Friedman v. Heart Inst. of Port St. Lucie, Inc.*, 863 So. 2d 189, 192 (Fla. 2003) (It "is universally accepted, as well as settled in Florida, [that] a 'claim' under the [Fraudulent Transfer] Act may be maintained even though 'contingent' and not yet reduced to judgment." (alterations added; citations and internal quotation marks omitted)).

In determining a debtor's actual intent and whether it was to "hinder, delay, or defraud any creditor of the debtor," FLA. STAT. § 726.105(1)(a), the UFTA looks to indicia of intent commonly known as "badges of fraud," *Amjad Munim, M.D., P.A.*, 648 So. 2d at 152; *see also In*

*re Am. Way Serv. Corp.*, 229 B.R. 496 (Bankr. S.D. Fla. 1999). Factors that may be considered among the badges of fraud are whether the transfer was to an insider, whether the debtor retained possession or control of the property transferred after the transfer, whether the transfer or obligation was disclosed or concealed, whether before the transfer was made the debtor had been sued or threatened with suit, whether the transfer was of substantially all the debtor's assets, whether the debtor absconded, whether the debtor removed or concealed assets, whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred, whether the debtor was insolvent or became insolvent shortly after the transfer, whether the transfer occurred shortly before or after a substantial debt was incurred, and whether the debtor transferred the essential assets of the business to a lienor who transferred them to an insider of the debtor. *See* FLA. STAT. §§ 726.105(2)(a)–(k).

While one specific badge of fraud is insufficient to establish fraudulent intent, "several of them together may afford a basis to infer fraud." *In re PSI Indus., Inc.*, 306 B.R. at 387 (citing *In re World Vision Entm't, Inc.*, 275 B.R. 641 (Bankr. M.D. Fla. 2002)). Furthermore, "[t]he existence of badges of fraud create a prima facie case and raise a rebuttable presumption that the transaction is void." *Nationsbank, N.A. v. Coastal Utils., Inc.*, 814 So. 2d 1227, 1230 (Fla. 4th DCA 2002) (citation omitted). Nevertheless, "[a] transfer or obligation is not voidable . . . against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." FLA. STAT. § 726.109(1).

National Maritime emphasizes several badges of fraud establish Burrell had actual fraudulent intent. Having received the testimony and evidence, the Court agrees. The UFTA defines an "insider" as a director, officer, person in control, or relative of the same, *see* FLA. STAT. § 726.102(8)(b)(6), as well as an insider of an affiliate as if the affiliate were the debtor,

9

*see* FLA. STAT. 726.102(8)(d).  Straub was the controlling member of Burrell and controlling shareholder of Burrell Industries.  Burrell Industries is an affiliate of Burrell, and Straub is an insider of Burrell and Burrell Industries under the UFTA.  One badge of fraud is clearly satisfied.

The underlying action was pending against Burrell and Straub at the time of the transfer.  This second badge of fraud is clearly established.

Under Florida Statute sections 726.103(1) & (2), "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation;" and "[a] debtor who is generally not paying his or her debts as they become due is presumed to be insolvent."  Burrell satisfies this definition.  At no time did Burrell generate its own revenues.  It operated solely on funds provided by its affiliate, Burrell Industries.  At the time of the transfer, Burrell owed approximately $6.6 million to Burrell Industries, and Burrell's liabilities exceeded its assets by at least $4 million.  The transfer consisted of all of Burrell's assets rendering Burrell completely insolvent.  This third badge of fraud is clearly satisfied.

Straub makes several arguments in an effort to carry his burden of proof.  He insists the fact that a suit is pending against another person, or that the person is indebted to another, does not render fraudulent that person's conveyance of property.  Further, Straub states a property owner has the right to dispose of property so long as the transfer of property does not injure or prejudice creditors' rights.  He insists the transfer of the funds to himself was to partially satisfy the pre-existing $3.2 million loan made on October 24, 2008.  That Burrell chose to pay some creditors over others is not in itself a fraudulent transfer, says Straub, particularly where Burrell needed to deliver the Vessel to the buyer free and clear of liens and encumbrances, which it was able to accomplish when Burrell Industries, to whom Straub had loaned the money in October 2008, released the mortgage it held upon partial payment of the note by Burrell.

While Straub's protestations are seemingly true, they do not overcome the badges of fraud or rebut the presumption the transfer is void. *See Nationsbank, N.A.*, 814 So. 2d at 1230. Straub's combative and unnecessarily repetitive and ever-shifting testimony, combined with his refusal to answer any questions asked of him by National Maritime's attorney directly, lend further support to the undersigned's rejection of his excuses. Straub directed where the funds were to go, and he chose to prefer himself over National Maritime. This was done under circumstances where he knew National Maritime would be prejudiced as Burrell had no other assets besides the Vessel, generators or other vaguely-described assets of Burrell (not listed on any documentation provided to National Maritime in this litigation) notwithstanding. Burrell Industries released its preferred ship's mortgage even though Burrell did not pay all it owed. The Court can only conclude that had Burrell repaid Burrell Industries some $99,660.05 less, presumably Straub could have directed Burrell Industries to similarly release its lien to effectuate the sale and transfer of the Vessel.

National Maritime has satisfied its burden of showing, under Count II of the Supplemental Complaint, that there was a creditor to be defrauded (National Maritime), a debtor intending fraud (Burrell), and conveyance of property that could have been applied to payment of the debt due (transfer of the sale proceeds to the insider controlling all of the transactions, Straub). *See In re PSI Indus., Inc.*, 306 B.R. at 387.

**B.      Count V: Florida Statute Section 726.106**

Count V of the Supplemental Complaint alleges a violation of Florida Statute Section 726.106. Under Section 726.106(2), "[a] transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to

believe that the debtor was insolvent." A transfer is not voidable under this section "[t]o the extent the insider gave new value to or for the benefit of the debtor after the transfer was made unless the new value was secured by a valid lien." FLA. STAT. § 726.109(6)(a). Under Florida Statute Section 726.104(1), "[v]alue is given for a transfer . . . if, in exchange for the transfer . . . an antecedent debt is secured or satisfied . . . ." The purpose behind section 726.106(2) is that the insider should not be permitted to "accept payment for an antecedent debt when the debtor is insolvent, unless other creditors are paid first." *Mansolillo v. Parties by Lynn, Inc.*, 753 So. 2d 637, 639 (Fla. 3d DCA 2000).

Straub maintains the $2.249 million transfer he received on May 6, 2011 was in partial repayment of the $3.2 million loan he had earlier made that allowed Burrell to purchase the Vessel, hence constituting new value. Straub insists Burrell made a valid conveyance to him to discharge a preexisting debt, and therefore National Maritime's claim stated in Count V must fail. Straub's arguments fail to persuade.

The statutory language relied upon in Count V states a "transfer made by a debtor *is fraudulent*" if certain conditions are satisfied. FLA. STAT. § 726.106(2) (emphasis added). The statutory conditions are satisfied here. The creditor's claim must arise before the transfer was made. National Maritime was a creditor of Burrell under the UFTA at the time Burrell transferred the sale proceeds to Straub. *See Friedman*, 863 So. 2d at 192 ("A 'claim' under the [UFTA] may be maintained even though 'contingent' and not yet reduced to judgment." (internal quotation marks and citations omitted)). National Maritime's claim against Burrell arose well before the transfer by Burrell to Straub.

Under Florida Statue section 726.106(2), the transfer was made to an insider, Straub, for an antecedent debt evidenced by the promissory notes. The second statutory condition is

satisfied. The debtor, Burrell, was certainly insolvent at the time the transfer was made. And the Court is convinced that Straub, as the sole person controlling Burrell and Burrell Shipping and all of the relevant transactions, not only had reasonable cause to believe Burrell was insolvent; he in fact knew Burrell was insolvent.

Finally, the antecedent debt was not truly Straub's, but rather, Burrell Industries' debt. The insider Straub did not give new value to or for the benefit of Burrell after the transfer was made, a way in which the transfer might not be voidable pursuant to Florida Statute section 726.109(6)(a). Value was not provided by Straub to Burrell as no property was transferred, and an antecedent debt of Straub's was not secured or satisfied. Consequently, the Court finds the transfer was a fraudulent conveyance under Florida Statute section 726.106(2).

### IV.   CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that final judgment will be entered by separate order for Plaintiff, National Maritime Services, Inc., and against Defendant, Burrell Shipping Company, LLC, and Impleaded Defendant, Glenn F. Straub, for the amount of the Final Judgment entered against Burrell Shipping Company, LLC.

**DONE AND ORDERED** in Miami, Florida, this 24th day of October, 2013.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record